Filed 9/10/24  Marriage of Martinez and Fernandez CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re the Marriage of OFELIA CRUZ MARTINEZ and SILVERIO CANADA FERNANDEZ.<br>_____<br><br>OFELIA CRUZ MARTINEZ,<br><br>    Respondent,<br><br>    v.<br><br>SILVERIO CANADA FERNANDEZ,<br><br>    Appellant. | B326250<br><br>(Los Angeles County<br>Super. Ct. No. 22WHFL01828) |

APPEAL from an order of the Superior Court of Los Angeles County, A. Veronica Sauceda, Judge.  Affirmed.

Thomas E. Shinton for Appellant.

No appearance for Respondent.

_____

Ofelia Martinez (Martinez) filed for divorce and a request for a domestic violence restraining order (DVRO) against Silverio Fernandez (Fernandez). The trial court granted Martinez's DVRO request, resulting in the issuance of a three-year restraining order against Fernandez.

Fernandez appeals the restraining order, arguing the trial court erred. Most of his arguments are legally untenable and/or not supported by the record. In the interests of justice, we have attempted to address the issues he raises. We also note where his arguments are waived for failure to provide a complete record and cogent legal analysis.

We affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 24, 2022, Martinez filed a petition for dissolution of her marriage to Fernandez, with whom she shares four adult children. Two days later, on October 26, 2022, she filed a DVRO request against Fernandez. Fernandez did not provide us with a copy of Martinez's DVRO request.

The trial court granted a temporary DVRO against Fernandez, effective until the hearing date. The record on appeal does not include a copy of the temporary DVRO.

On November 9, 2022, Fernandez filed his response to the dissolution petition. He also filed a request to continue the DVRO hearing; the trial court granted his request and reissued the temporary DVRO to reflect the new hearing date. The record on appeal does not include a copy of Fernandez's request to continue the DVRO hearing.

Fernandez did not file a response, nor did he oppose Martinez's DVRO request in writing.

On November 29, 2022, the trial court held the hearing on Martinez's DVRO request. Martinez was present in court with her lawyer and was assisted by a Spanish interpreter. Fernandez was self-represented and was also assisted by the same Spanish interpreter. Fernandez originally appeared in court in person but because he was sick, the court directed him to leave the courtroom and appear via LA Court Connect (Court Connect). Fernandez did so.

Martinez's counsel notified the court that she tried to meet and confer with Fernandez "all week" but he "hasn't returned any of [her] phone calls." She tried to meet and confer with him on the day of the hearing in the court hallway, but he "indicated he was not [Fernandez]" and left—despite his children confirming that he was, in fact, Fernandez. The court asked Fernandez if Martinez's counsel approached him earlier today. Fernandez stated that counsel asked him if he is "Silverado" and he said no (as his name is Silverio). The court "note[d] that [Martinez's] counsel attempted to meet and confer with [Fernandez]."

The court noted that Fernandez had not filed a response to the DVRO request and asked whether Fernandez agreed with Martinez's request. He said he "disagree[d]" and that he is "very sick." The court explained that is "why you're participating remotely" and asked whether he was "asking for a continuance." Fernandez said, "Yes."

Martinez's counsel argued against a continuance: "This is [Fernandez's] second continuance. . . . He filed the request for continuance and received . . . today's date. This is the second time that my client and her four children have had to call out of work and not attend classes. [¶] And we've attempted to communicate with [him] about the restraining order. And he has

continued to harass my client despite the restraining order . . . .
So we just feel that this is another [one] of his tactics to continue
draining my client . . . financially when he knows that she's not
capable [of] paying more money for this when she [also has] a
pending divorce."

The court "reviewed the court file," confirmed it granted
Fernandez's continuance request three weeks ago, and explained
to Fernandez that he is "only entitled to one continuance . . . and
[has] received that continuance." The court then ordered the
parties to meet and confer.

The court later recalled the matter. The parties were
unable to reach an agreement. The court asked Fernandez
whether he received the exhibits (text messages and videos) that
Martinez planned to rely on as evidence. Fernandez confirmed
receiving them.

The court indicated it will "begin with [Martinez's]
testimony first, and then [will] move on to [Fernandez]." The
court indicated it will not listen to all four of Martinez's witnesses
as it is "duplicative testimony" and said it would only hear from
Martinez and the parties' daughter Itzel, who was a percipient
witness to the incidents.

We note at this juncture that the November 29, 2022
minute order provides both "parties are sworn and testify."
However, a review of the reporter's transcript shows that only
Fernandez was sworn in to testify.

Martinez provided unsworn testimony. She began to
describe the October 6, 2022 incident, but the court interrupted
and stated, "I'm going to interrupt . . . . This is in her declaration.
I've read and considered it. You don't need to repeat anything
that's in her declaration." Martinez proceeded to testify about

4

incidents that took place after Fernandez was served with the temporary DVRO on October 27, 2022. She said that Fernandez "left an alarm on that goes off every day after 12:00 a.m." in a bedroom that he locked, that she has no access to. Martinez also testified that "someone has called [her] work, approximately, four times. When [she] answer[s], . . . [n]o one answers." She has "no doubt he's behind all this." Martinez testified that Fernandez has failed to pay for the mortgage for the month of November, violating one of the terms of the temporary DVRO. She testified that Fernandez claims he does not have money to pay for the mortgage, but she provided the court with text messages Fernandez sent her where he states he is going to Mexico to watch a soccer game live.

Martinez testified she has been hurt "verbally, psychologically, and mentally" by Fernandez. He has "threatened to kill me," called me a "worthless immigrant," and threatened to "deport me." Fernandez's "psychological mistreatment" of Martinez and their four children is why she fears for their safety. Their daughter Wendy is "terribly afraid" of him. Wendy and her son Bryan lock themselves in their bedrooms when they hear that Fernandez has come home from work. In Wendy's February 2022 letter, she stated she did not "want to live any longer" because of the "aggressive actions of her dad towards us . . . [and] because of the threats, especially the death threats against me."

We were not provided a copy of the evidence submitted to and relied upon by the court.

Fernandez was sworn and testified next. He stated he does not agree with Martinez's DVRO request "[b]ecause due to this restraining order, I'm . . . going to lose my job. It's a company

5

policy." He stated he "read very little" of Martinez's DVRO request because he was "sick for the last two weeks."

The court asked Fernandez: Martinez "stated in her declaration that on October 6th, she was home relaxing on the couch. You yelled at her to leave the home. You slapped her feet off the couch, and then you physically tried to push her out of the home by grabbing her arm. [¶] Did that happen?" Fernandez answered, "That is not true. [All] the witnesses in my area, all of my neighbors, can testify that there has never been violence in my house."

The court next asked Fernandez whether he pushed his daughter Itzel, as Martinez described in her DVRO request. Fernandez said, "No. [I] called the police. I went to the police station. I talked to my daughter, and they said that it had just been an argument and there were no charges filed against me."

The court referred to Martinez's declaration where she said the incident "left marks" on her arm and that "Itzel hit her head on the wall when you shoved her out of the way." Fernandez denied it again and said, "That is not true. I called the police myself [and] told the police that I was waiting for them at my house."

The court asked Fernandez whether he "placed a lock on the refrigerator, on the electrical box, and the bedroom door that [he] share[d]" with Martinez. Fernandez replied, "Yes. In the bedroom, not in the refrigerator."

The court next asked whether it is "true that you've not allowed [Martinez] to remove her personal belongings from the bedroom that you locked?" Fernandez answered, "She doesn't have anything in there. She took everything out when she got away from me."

The court asked Fernandez if it is true that he failed to make the mortgage payment in violation of the temporary DVRO. Fernandez stated he does not have the money because he has not worked. The court asked how long he has been out of work. Fernandez stated, "For as long as I have been sick, I've been— and disability for—during—in two weeks, for seven days, three days and then four days." The court asked if he was "receiving disability payments from the State of California" and he said he receives nothing. Fernandez then said that he "worked today for six hours. And depending how I feel, I will continue to work."

The court also asked whether it is "true that you physically assaulted your adult son by strangling him, approximately, four months ago?" Fernandez answered, "He doesn't live there anymore. [It's] been like almost a year or two years that I haven't seen him." The court followed up, "So you didn't physically assault your son by strangling him?" Fernandez replied, "[T]he neighbors are witnesses to that." The court stated: "Sir, the neighbors do not live with you. These incidents, as alleged by [Martinez] happened in the home." Fernandez stated he has not seen his son "for two years."

The court asked Fernandez if there is "anything else that you'd like me to know?" Fernandez answered: "I just want to tell the court that I'm not going to go back home after the restraining order is lifted. I'm just asking not to do this because of my job and to give me time to bring all my witnesses to court to prove that I'm not guilty." The court explained, "Well, this is not a criminal proceeding. This is a civil family law restraining order matter. Today was the day. You should have brought your witnesses in today. You didn't. You're the one who requested the continuance, and you were well aware of the date. You filed your

request to continue on November 9th, and on the 9th you received today's date as the new hearing date." Fernandez agreed, "Yes."

The trial court granted Martinez's DVRO request against Fernandez, and made the following ruling:

"The court has considered [Martinez's] testimony and her written declaration, including the attachments that were included in her request. [¶] The court has also considered [Fernandez's] testimony, and the court finds [Martinez's] testimony to be more credible than [Fernandez]." Martinez "has met her burden of proof and has shown that you have caused her emotional distress. You've disturbed her peace. You've in the past physically and verbally assaulted her and your adult children."

The court continued: "I know that you're working because the first thing that you said was that you're opposed to this request because it impacts your work, and then you told me you were on disability, and then you said you've not worked for the last two to three weeks, and then you said you worked for six hours today. So your testimony is highly incredible. I can't believe anything that you say."

The court ordered Fernandez to stay at least 100 yards away from Martinez, her car, home, and place of work. The court also ordered him to stay away from "additional protected persons"—three of the parties' adult children (Itzel, Bryan, and Wendy) who currently live with Martinez. "[Y]ou cannot harass, attack, strike, threaten, assault, hit, follow, stalk, molest, destroy the personal property, disturb the peace, keep under surveillance, impersonate, [or] otherwise block [Martinez's] movement. [¶] You cannot contact her directly or indirectly by any means; and that includes using third party, phone, mail, and e-mail." The court

8

ordered Fernandez to move out of the family home and awarded Martinez the right to use, control, and possess the family home. Fernandez was ordered to pay the outstanding mortgage for November and December 2022 to Bank of America and must "continue paying the mortgage payments until further order of the court."

The DVRO included a "No Guns or Other Firearms or Ammunition" mandatory provision.[1]  Fernandez was ordered to sell, store, or turn in to a law enforcement agency, any guns or firearms in his possession or control within 24 hours of being served with the DVRO.

The DVRO is effective for a period of three years; it is set to expire on November 29, 2025.

This appeal followed.

## DISCUSSION

Fernandez contends that the DVRO should be reversed and raises a multitude of issues, most of which do not include sufficient, cogent argument and analysis.  We address each issue.

A.    *The Domestic Violence Prevention Act*

The Domestic Violence Prevention Act (DVPA) (Fam. Code,[2] § 6200 et seq.) exists "to prevent acts of domestic violence,

---

[1]    The DV-130 Restraining Order After Hearing form includes a mandatory provision that a restrained party must relinquish his or her firearm.  This is based upon Family Code section 6389, which prohibits an individual subject to a DVRO from possessing a firearm or ammunition.  (Fam. Code, § 6389; see also *id.*, § 6218.)

[2]    Undesignated statutory references are to the Family Code.

9

abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) Under the DVPA, a court is authorized to issue a protective order enjoining a party from engaging in specific acts of harassment or abuse against a spouse or cohabitant and excluding a party from a dwelling. (§§ 6211, subds. (a) & (b), 6218, 6320–6322.) The court may issue a DVRO if evidence is provided showing "reasonable proof of a past act or acts of abuse"; the court may issue an order under this part based solely on the affidavit or testimony of the person requesting the restraining order. (§ 6300, subd. (a).) The DVPA requires a showing of past abuse by a preponderance of the evidence. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.)

"The DVPA defines domestic violence, as relevant here, as abuse perpetrated against a spouse . . . of a party. (§ 6211, subds. (a) & (e).)" (*In re Marriage of Davila & Mejia*, *supra*, 29 Cal.App.5th at p. 226, fn. omitted.) Section 6203, subdivision (a), defines "abuse" for purposes of the DVPA as conduct described by any of the following four categories: (1) intentionally or recklessly causing or attempting to cause bodily injury; (2) sexual assault; (3) placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another; or (4) engaging in any behavior that has been or could be enjoined pursuant to section 6320. Section 6320, subdivision (a), provides in part that "[t]he court may issue an ex parte order enjoining a party from . . . stalking, threatening, . . . harassing, . . . making annoying telephone calls . . . or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household

10

members." (§ 6320, subd. (a).) "Disturbing the peace" for purposes of section 6320 refers to "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly . . . . This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with the person's free will and personal liberty." (§ 6320, subd. (c).)

B. ***Standard of Review***

The court's issuance of a restraining order under the DVPA is discretionary. (§ 6300, subd. (a).) We review an order granting or denying a DVRO for abuse of discretion. (*In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 933.) " 'A trial court's exercise of discretion will not be disturbed on appeal unless, as a matter of law, an abuse of discretion is shown—i.e.,—where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances.' " (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480, italics omitted.) " 'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it.' " (*Ibid.*) We resolve all conflicts in the evidence in favor of Martinez, the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings. (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31.) " 'The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.' " (*In re Marriage of F.M. & M.M.*

(2021) 65 Cal.App.5th 106, 116; see *Bailey v. Murray* (2024) 102 Cal.App.5th 677, 684.)

C.   ***The Trial Court Did Not Abuse its Discretion in Issuing the DVRO Against Fernandez.***

Fernandez raises a hodgepodge of complaints, some couched in due process language.  We address each argument in turn.

Fernandez first argues that the trial court "abused its discretion when it ordered [him] to leave the courthouse and to conduct his trial via Los Angeles Court Connect."  He contends "[w]hen a party is ordered to physically leave court that same day as he appeared in person and then suddenly be ordered to put on his trial over the phone, no reasonable jurist can believe that [Fernandez] was given a fair opportunity to be heard."  He argues he was not given the opportunity to cross-examine Martinez and that he "was completely railroaded by the trial court and . . . removed from the court, denied the opportunity to raise objections, [and] denied the opportunity to present evidence, etc."

We disagree.

A one-paragraph argument with generalized claims that "no reasonable jurist can believe that [Fernandez] was given a fair opportunity to be heard" and that he was "never presented an opportunity . . . to cross examine," without more, does not constitute reversible error.  He merely contends the trial court "denied" him the opportunity to cross-examine "simply by the way [the judge] conducted the proceeding."  This does not constitute a well-reasoned argument.  He does not contend he was not allowed to call witnesses or testify, had he chosen to do so.  He was well aware of the date of the hearing, especially given the fact that he requested a continuance of the original hearing

12

date and was granted a new date. Fernandez also was not "removed from the court," as he claims, but was told to appear via Court Connect since he said he is sick. Fernandez's having to proceed via Court Connect instead of in person makes no difference in his ability to be heard, and Fernandez fails to provide any case law or statute that provides differently. He provides no evidence to support a claim that a fundamental principle of due process—an opportunity to be heard or to cross-examine witnesses—was not observed in this case. (See *Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 622.)

The reporter's transcript reveals Fernandez was afforded ample opportunity to state his position and to present evidence and argument in opposition to Martinez's DVRO request. That he did not avail himself of the opportunity to file a response (form DV-120) and prepare for a hearing that had already been continued once is on Fernandez. The trial court also commented on this during the underlying hearing, "Today was the day. You should have brought your witnesses in today. You didn't. You're the one who requested the continuance, and you were well aware of the date."

In fact, a review of the reporter's transcript shows that the trial court posed questions to elicit more information and to give Fernandez an opportunity to discuss his position. Fernandez was unrepresented in the trial court, while Martinez was represented by counsel. Rather than have Fernandez go through the pretense of posing questions to himself and then answering them, the trial court asked Fernandez general questions about the incidents raised in the DVRO request that allowed him to tell the trial court his response to the claims against him. "A trial court has both the discretion and the duty to ask questions of witnesses,

13

provided this is done in an effort to elicit material facts or to clarify confusing or unclear testimony" and so long as the court does not "assume the role of either the prosecution or of the defense.  [Citation.]  The court's questioning must be ' "temperate, nonargumentative, and scrupulously fair. " ' " (*People v. Cook* (2006) 39 Cal.4th 566, 597.)  No error has been shown.

Second, Fernandez argues the trial court "erred by denying . . . his request to continue the hearing based upon good cause due to [his] illness, being ordered to leave the courtroom, and being unable to present his witnesses and provide his written response to the court."  He contends that the court may only grant a continuance on an affirmative showing of good cause and that "good cause [was] clearly evident when the government itself orders [Fernandez] to vacate the courthouse."  Fernandez cites to section 245, subdivision (b) in support, which provides that a party "may request a continuance of the hearing, which the court shall grant on a showing of good cause."  (§ 245, subd. (b).)

Fernandez would do well to read the entirety of section 245, and not just rely on subdivision (b)—as subdivision (a) expressly specifies that respondent "shall be entitled . . . to *one* continuance for a reasonable period, to respond to the petition" for a restraining order.  (See § 245, subd. (a), italics added.) Fernandez had been already granted a continuance.  On November 9, 2022, he filed a request to continue the DVRO hearing; his request was granted and the continued hearing took place on November 29, 2022.  The reporter's transcript shows the court explained to Fernandez that he is "only entitled to one continuance . . . and [has] received that continuance."

14

He also argues that if he was deemed "too sick to physically appear in court, then he was too sick to put on his trial over the phone on sudden notice." Not so. Fernandez was well aware of the date of the continued hearing. Having to appear and respond to or oppose the DVRO request in person or via Court Connect makes no difference. Plus, the trial court found Fernandez's testimony "highly incredible" and that it "can't believe anything that [he] sa[id]." The trial court weighs the evidence and makes findings on witness credibility, which we do not disturb. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) It is highly plausible that the trial court did not find credible Fernandez's claim of being too sick, especially because he testified he worked six hours that day. If he was well enough to work, then he is well enough to remotely appear and respond to a pending DVRO request against him. We see no abuse of discretion by the trial court in deciding against continuing the matter for a second time.

Third, Fernandez argues "the trial court clerk erred by only swearing in [Fernandez] and not [Martinez] on the record." He contends that the record does not show Martinez being sworn in. We noted in the facts section above that while the November 29, 2022 minute order provides both "parties are sworn and testify," a review of the reporter's transcript shows that only Fernandez was sworn in to testify.

Martinez's testimony was received without objection. " 'No constitutional provision is violated if unsworn testimony is received, and thus a party waives its objection to unsworn testimony by failing to object to it.' " (*City of Fontana v. California Dept. of Tax & Fee Administration* (2017) 17 Cal.App.5th 899, 921 (*City of Fontana*); see *In re Heather H.* (1988) 200 Cal.App.3d 91, 96 ["[W]here the adequacy of the

oathtaking is not raised at trial, the issue is deemed waived on appeal."].)  " 'Incompetent or otherwise inadmissible evidence admitted without objection will sustain the judgment.' "  (*City of Fontana*, at p. 921.)  Fernandez does not cite any objections to the admissibility of Martinez's testimony or evidence in the record. Most importantly, Fernandez failed to argue or state in his opening brief how the trial court's reliance on unsworn testimony prejudiced him in any way, nor does he demonstrate that Martinez's unsworn testimony was the sole basis for the trial court's issuance of the DVRO.  The limited record provided convinced us that the trial court's ruling considered Martinez's evidence—including her DVRO request, her declaration, and her attachments—more credible and persuasive and ruled in her favor.  As previously mentioned, the trial court found Fernandez's testimony "highly incredible," stating it could not believe anything he said.

Fourth, Fernandez argues the court erred "by using the same Spanish language interpreter for both" parties; the court "should also do their best to . . . avoid any appearance of impropriety in using the same Spanish Language interpreter to interpret for both parties."  Fernandez has not provided legal authority to support his argument, and we have not found any. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 165, fn. 6 [We " 'may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' "].)  He has forfeited this contention.

Fifth, Fernandez argues the court "failed to consider issues of standing in relation to the adult children being added" in the

16

DVRO.  He contends there was "no evidence that [Martinez] had any standing whatsoever on behalf of the parties['] all four adult children.  What capacity did [Martinez] have in standing in for children who have been emancipated by law?  How does the trial court even know that any of the adult children wanted a restraining order against their father?  There certainly was not admissible evidence to demonstrate such.  And if any of the adult children wanted a restraining order against [Fernandez], they can go to the courthouse and file one for themselves."

Not so.  The DV-130 Restraining Order After Hearing form contains provisions that allow for "Additional Protected Persons" who are the "family or household members" of the protected person.  Fernandez seemingly raises a standing issue but fails to support it with any reasoned argument and citations to authority.  We thus treat the point as waived.  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.)  We also do not take kindly to Fernandez arguing that there "was not admissible evidence to demonstrate" the need for a DVRO protecting the parties' children when he fails to provide us with any of the evidence submitted to and relied on by the trial court.

Next, Fernandez "raises 14th Amendment, 6th Amendment, 5th Amendment and 2nd Amendment violations both due to the overly broad statute of the DVPA and as applied to this case."  The problem with Fernandez's argument is twofold.  Not only are these statements the *only* argument provided by Fernandez with respect to his Fourteenth, Sixth, and Fifth Amendment challenges, but also the record on which it rests is missing the DVRO request with Martinez's declaration and all attachments, exhibits, and evidence submitted to and relied on by the trial court.

An appellant who does not provide adequate legal authority and analysis to support a contention forfeits that contention. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) Indeed, the cardinal rule of appellate review is that a judgment or order of the trial court is presumed correct and prejudicial error must be *affirmatively* shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187.)

Here, Fernandez has failed to offer reasoned analysis of the Fifth, Sixth, and Fourteenth Amendment claims made. The burden is not on the reviewing court to make inquiry as to the basis for a party's arguments; rather it is on the party to make those arguments—convincingly, and with evidentiary support. We treat an issue and/or argument as waived " ' "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority." ' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) "The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) Between the lack of record citations and the undeveloped arguments, we simply cannot opine on these matters. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

As for his Second Amendment argument, Fernandez argues for the first time on appeal that the firearms prohibition imposed

by the trial court via the DVRO violated his Second Amendment right to bear arms. He argues the DVPA is "not sufficiently narrowly tailored to meet the state's interest in protecting victims of domestic violence" and that it "casts too wide of a net that does not comport with traditional or historical understanding of firearm regulation in the United States." Fernandez also contends his constitutional rights were violated because the trial court "fail[ed] to balance his right to self-defense and to keep and bear arms for self-defense against issuing a [DVRO] with no evidence of physical harm, other than an offer of proof as to what a letter stated and other than an alleged slap on the foot."

As a preliminary matter, we make clear that we do not consider Fernandez's "as-applied" challenge to the firearms restriction because he forfeited this claim by failing to object in the trial court. (*Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1143; *People v. Patton* (2019) 41 Cal.App.5th 934, 946 ["An as-applied constitutional challenge is forfeited unless previously raised."].) It is not appropriately raised for the first time on appeal. We will, however, consider Fernandez's facial challenge to the DVPA, which Fernandez contends "is not sufficiently narrowly tailored to meet the state's interest in protecting victims of domestic violence." (See *In re Sheena K.* (2007) 40 Cal.4th 875, 889 [a facial constitutional challenge may be raised for the first time on appeal].)

Fernandez raises a Second Amendment issue as to the DV-130 Restraining Order After Hearing form's mandatory provision prohibiting a restrained person from possessing a firearm (which is based on section 6389). This issue was addressed in *Altafulla v. Ervin* (2015) 238 Cal.App.4th 571 (*Altafulla*), where the court

upheld section 6389 following a Second Amendment challenge to the statute. The court in *Altafulla* also explained that the United States Supreme Court's decision in *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), which held that the Second Amendment confers an individual right to keep and bear arms, did not affect the constitutionality of section 6389. (*Heller*, at pp. 581–582.) *Heller* affirmed "certain traditional limitations on the right to bear arms and 'identified an expressly nonexclusive list of "presumptively lawful regulatory measures," stating "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." ' " (*Altafulla*, at p. 581.) *Altafulla* held section 6389 is "analogous to a prohibition on felon weapon possession," which is a constitutionally valid restriction on an individual's right to possess a firearm. (*Altafulla*, at p. 581.)

Citing the United States Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*), Fernandez argues the firearms prohibition included in the DVRO issued by the trial court violated his Second Amendment right. We disagree with Fernandez and do not interpret *Bruen* the way he does. In *Bruen*, the Supreme Court held that New York's public-carry licensing scheme violated the Second Amendment because it prevented law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms. (*Id.* at p. 71.) *Bruen* reaffirmed *Heller*'s guarantee of the right of "law-abiding citizens" to possess firearms. (*Id.* at p. 26.) *Bruen* did not call into question the

20

lawfulness of firearms restrictions imposed on individuals subject to a DVRO.

Fernandez argues "the trial court primarily concluded that [Fernandez] disturbed [Martinez's] peace by failing to pay the mortgage [and] allegedly verbally abusing [Martinez]." He contends that "no where in American History is there firearm regulation where simply because a party allegedly disturbed the other party's peace which included non-violent acts towards that person that the government could then remove their right to a firearm." As emphasized in *Altafulla*, " '[A]nger management issues may arise in domestic settings,' and a firearm restriction in such cases 'is thus a temporary burden during a period when the subject of the order is adjudged to pose a particular risk of further abuse.' " (*Altafulla*, *supra*, 238 Cal.App.4th at p. 582.) " '[R]educing domestic violence is a compelling government interest . . . and [a] temporary prohibition, while the [restraining] order is outstanding, is narrowly tailored to that compelling interest.' " (*Ibid.*)

The Supreme Court's recent case, *United States v. Rahimi* (2024) ___ U.S. ___ [144 S.Ct. 1889, 219 L.Ed.2d 351] (*Rahimi*), does not help Fernandez either. In that case, Rahimi was indicted under title 18 of the United States Code section 922(g)(8), a federal statute that prohibits individuals subject to a DVRO from possessing a firearm. A prosecution under section 922(g)(8) may proceed only if the DVRO meets certain statutory criteria; particularly, the order must either contain a finding that the defendant represents a credible threat to the physical safety of his or her partner or by its terms explicitly prohibit the use or attempted/threatened use of physical force against that individual. Rahimi made a facial challenge to section 922(g)(8),

21

arguing that the statute on its face violates the Second Amendment. The Supreme Court in *Rahimi* held that "[w]hen an individual has been found by a court to pose a credible threat to the physical safety of another, that individual may be temporarily disarmed consistent with the Second Amendment." (*Rahimi*, at p. ___ [144 S.Ct. at p. 1892].)

Here, we are in a California family law dissolution and DVRO action, not in a federal prosecution under 18 United States Code section 922(g)(8). And we were not provided any argument or reasoning as to whether the requirements to an action under section 922(g)(8) should also apply in a DVRO under California law. In fact, such a finding is not required to issue a DVRO with a firearms prohibition under California law. Section 6389 prohibits a person subject to a family law protective order (like a DVRO) from possessing firearms while the protective order is in effect—and it does not require a finding of a credible threat of physical abuse. (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 852.)

Plus, as already mentioned above, we were not provided relevant documentation, such as the DVRO request, to enable us to know fully the basis on which the trial court issued the DVRO. Contrary to Fernandez's contention, the trial court did not issue the DVRO solely based on his failure to pay the mortgage and disturbing Martinez's peace. During the hearing, an incident from October 6, 2022 was referenced, the marks left on Martinez's arm from an incident was mentioned, Wendy's February 2022 letter was discussed, as well as another incident where he pushed his daughter Itzel. The parties' two children, Wendy and Bryan, fear Fernandez enough to lock themselves in their bedrooms when Fernandez comes home. Without the

22

DVRO request, Martinez's declaration, and all relevant exhibits/attachments, we are precluded from determining this issue, which is decided against Fernandez. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

Seventh and finally, Fernandez argues "it was error as a matter of law for the court to consider failure to pay the mortgage as a violation of the temporary [DVRO] without satisfying due process in regards to [Fernandez's] financial status." He contends the trial court violated his due process rights by concluding that he violated the temporary DVRO by failing to pay the mortgage "without first the opportunity to review an income and expense declaration" by Fernandez.

Fernandez is mistaken. Fernandez had the opportunity to file a response or opposition to the DVRO request, and to include the FL-150 Income and Expense Declaration form if he wanted the trial court to consider his financial status in making any order. The onus is on the party who wishes to contest his or her ability to pay the mortgage to submit evidence or a current income and expense declaration to present the inability to pay argument at the trial court level. (See *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227; *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291–292; see also Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2024), ¶ 14:265.3.)

On this record, we cannot say the trial court abused its discretion in issuing the DVRO against Fernandez.

## DISPOSITION

The trial court order is affirmed.  No costs are awarded.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


WILEY, J.


VIRAMONTES, J.